UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-61919-CIV-MARRA/JOHNSON

Court-appointed Receiver for
LANCER MANAGEMENT GROUP
LLC, LANCER MANAGEMENT
GROUP II LLC, LANCER OFFSHORE
INC., OMNIFUND LTD., LSPV INC.,
LSPV LLC, ALPHA OMEGA GROUP
INC., CLR ASSOCIATES, LLC and
G.H. ASSOCIATES LLC

    Plaintiffs
vs.

REDWOOD FINANCIAL GROUP, INC.;
THE REDWOOD GROUP, INC.;
ROBERT D. MAUM; and
JAMES W. RAKER

    Defendants.
_____/

## ORDER AND OPINION

**THIS CAUSE** is before the Court upon Defendant James W. Raker's Motion to Dismiss Complaint [DE 16] and Defendant Robert D. Maum's Motion to Dismiss Complaint [DE 44]. The motions are fully briefed and ripe for review. The Court has carefully considered the motions, responses, and replies, and is otherwise fully advised in the premises.

On December 22, 2006, Plaintiff, Marty Steinberg (the "Receiver"), as court-appointed Receiver for Lancer Management Group LLC, Lancer Management Group II LLC (together, the "Management Companies"), Lancer Offshore Inc., Omnifund Ltd.,

LSPV Inc., LSPV LLC (together, the "Funds"),[1] Alpha Omega Group Inc., CLR Associates, LLC and G.H. Associates LLC (collectively, the "Receivership Entities"), filed a four-count complaint against James W. Raker ("Raker"), Redwood Financial Group, Inc., the Redwood Group, Inc. (together, the "Redwood Companies"), and Robert Maum ("Maum") (collectively, the "Defendants").  General allegations regarding the formation and organization of the funds and the entities include the following:

The Funds paid management and incentive fees to Lauer through the Management Companies, ostensibly for the use of his expertise in selecting investment positions for the Offshore and Omnifund funds.  Compl. ¶ 45.  Partners (an investment fund) and LMG II (one of the Management Companies) entered into a partnership agreement ("Partnership Agreement") which provided that Partners shall pay Lauer through LMG II incentive fees (20% net profits) and management fees (1% per year).  Compl. ¶¶ 28, 47, 48, 49.  Offshore (one of the investment Funds) and LMG (one of the Management Companies) entered into an "Offshore Management Agreement."  Compl. ¶ 50.  The Offshore Management Agreement provides that Offshore shall pay Lauer through LMG similar incentive and management fees.  Compl. ¶¶ 52, 53.  The Omnifund (one of the investment Funds) entered an "Investment Management Agreement" with Lancer (not defined) which provides that

---

[1] The Receiver refers to Lancer Offshore, Inc., Lancer Partners, L.P., Omnifund, Ltd., LSPV, Inc. and LSPV, LLC collectively as the "Funds."

Lauer, through LMG, would serve as Omnifund's investment manager. Compl. ¶ 55. The Omnifund Management Agreement also provides that Omnifund shall pay Lauer through LMG, management fees (2% per year) and incentive fees (25% net profits). ¶¶56, 57. The various management agreements themselves are not a part of the Complaint.

Lauer is the manager of the Management Companies and holds an 80% membership interest in each of the Management Companies. Compl. ¶¶ 59, 60. This fee structure gave Lauer the incentive to fraudulently raise the Funds' stated NAV at the end of each of the Funds' fiscal quarters and at year-end, when fees would be calculated. Compl. ¶ 65. Lauer manipulated the value of the investments in order to inflate the net asset values of the Funds, attract more investors, induce remaining investors not to redeem their shares, and generate additional management fees for the Management Companies and, in turn, himself. Compl. ¶ 71. These inflated NAVs of the Funds in turn inflated the fees payable to Lauer and convinced new investors to deposit new money into the Funds and convinced current investors to maintain their investments in the Funds. Compl. ¶ 77. The actual NAV of the Funds' holdings, without taking into account the influence of the manipulative trading and valuation practices, never exceeded the amount of principal deposited by investors in the Funds. Compl. ¶ 80. Thus the Funds lacked any excess profits with which to make distributions to vendors. *Id*. Nevertheless, the Funds continued to honor redemption requests submitted by investors seeking to cash out the "profits" apparent from the

artificially inflated net asset value of Partners' holdings.  Compl. ¶ 81.

Regarding the Defendants, the Complaint alleges that Maum and Raker directed one or more of the Receivership Entities to make transfers to the Redwood Companies in the amount of $150,000.  Compl. ¶ 82; Ex. B.  It further alleges that the Redwood Companies received these transfers from one or more of the Receivership Entities for the benefit of Maum and Raker.  Compl. ¶ 83.  The Complaint asserts the following claims against Defendants:

> I.   Actual fraudulent transfer under Florida Statutes § 726.105(1)(a), Florida Statutes § 726.108, and other applicable law;
>
> II.  Constructive fraudulent transfer under Florida Statutes § 726.105(1)(b), Florida Statutes § 726.108, and other applicable law;
>
> III. Constructive fraudulent transfer under Florida Statutes § 726.106(1), Florida Statutes § 726.108, and other applicable law; and
>
> IV.  Unjust enrichment.

DE 1.

Defendants have moved to dismiss the Complaint with prejudice asserting that the Receiver has no standing to sue the Defendants for fraudulent transfers under Chapter 726, Florida Statutes, or unjust enrichment, and that his equitable claim is further barred by the doctrine of *in pari delicto*.

## Standard of Review

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiff.  *See Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007).  When a defendant challenges the plaintiff's standing through a motion to dismiss, the court must construe all disputed facts in the light most favorable to the plaintiff in an effort to discern whether relief could be granted under any set of facts that could be proven consistent with the allegations.  *See Chepstow Ltd. v. Hunt*, 381 F.3d 1077, 1080 (11th Cir. 2004).

To satisfy the pleading requirements of Federal Rule of Civil Procedure 8, a complaint must contain a short and plain statement showing an entitlement to relief, and the statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (citing Fed. R. Civ. P. 8); *see also Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007); *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [ ] a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. at 1964-65 (citations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all

of the complaint's allegations are true." *Id.* at 1965.  Plaintiff must plead enough facts to state a plausible basis for the claim.  *Id.*

## Discussion

### Florida's Uniform Fraudulent Transfer Act

Fraudulent transfer claims under Florida law arise under the Florida Uniform Fraudulent Transfers Act ("FUFTA"), Fla. Stat. § 726.101, *et seq.*.  FUFTA, as set forth in Florida Statute § 726.105, provides the substantive requirements that must be pled to state a valid fraudulent transfer claim.  *Nationsbank, N.A. v. Coastal Utilities, Inc.*, 814 So.2d 1227, 1229 (Fla. Dist Ct. App. 2002).  The plaintiff must show that "(1) there was a creditor to be defrauded; (2) a debtor intending fraud; and (3) a conveyance of property which could have been applicable to the payment of the debt due." *Id.*

FUFTA specifically permits creditors to pursue claims against debtor-transferors.  In *Friedman v. Heart Institute of Port St. Lucie,* the Florida Supreme Court defined a creditor as one who possesses a "claim" under FUFTA and, thus, may seek a variety of remedies to prevent the fraudulent transfer of assets.  863 So.2d 189, 191-92 (Fla. 2003).  A "claim" means a right to payment, whether or not it is reduced to judgment.  *Id.*  The *Friedman* Court, based on the plain language of the statute, stated that a plaintiff suing under FUFTA must show he has a "claim" which qualifies him as a "creditor" of the entity or individual who is transferring or attempting to transfer funds to thwart the creditors' attachment.  *Id.*; Fla. Sta. §

726.105(1).

While an equity receiver may not pursue claims that are owned directly by creditors of the receivership entities, an equity receiver may bring a fraudulent transfer claim owned by the receivership entities in an ancillary action.  *See Freeman v. Dean Witter Reynolds, Inc.*, 865 So.2d 543, 550 (Fla. Dist. Ct. App. 2003).  The Receiver acknowledges that he must qualify as a creditor under FUFTA in order to have standing to assert fraudulent transfer claims.  According to the Receiver, he is not bringing this action on behalf of the investors but rather, "in fact . . . [as] a 'creditor' of the Management Companies by virtue of his claims against the Management Companies on behalf of the Funds."  DE 26 at 10.  Rather than point to any specific paragraph where this is alleged, the Receiver argues that pursuant to Fed.R.Civ.P. 8, he does not need to plead the elements underlying a claim, and that he qualifies as a creditor based on the allegations regarding the relationship among the Management Companies, the Funds and Lauer.

After carefully reviewing the allegations, the Receiver appears to argue that management and incentive fees were due from the Funds to the Management Companies and the Management Companies paid these monies to Lauer.  The Receiver also appears to argue that the Management Companies wrongfully and fraudulently overcharged the Funds for the management and incentive fees, thus making the Funds creditors of the Management Companies.  But the Receiver has neither identified on which specific entity's behalf he is suing as a creditor, nor has

he clearly articulated the basis upon which the transferor would be a debtor. The lack of specific factual allegations establishing the debtor/creditor relationship requires the Court to make assumptions in an effort to determine if the Receiver has properly alleged that he is a legitimate creditor with standing to pursue the transfers made to Defendants. In particular, it is unclear from the Complaint whether the Funds were obligated to pay management and incentive fees to the Management Companies or to Lauer.

In his response to the motions to dismiss, the Receiver states that he alleges that the Management Companies received management and incentive fees from the Funds. But what is alleged repeatedly is that the Funds paid Lauer through the Management Companies. *See, e.g.,* Compl. ¶¶ 52, 53, 55, 56, 57, 62, 64. It is not clear who had a right to receipt of the management and incentive fees from the Funds. Nor is it clear whether the Funds are a creditor of the Management Companies or of Lauer with respect to the management and incentive fees, the property which presumably has been transferred wrongfully. It is also unclear whether the Receiver is alleging the debtor intending the fraud is Maum and Raker, Lauer, or the Management Companies. Compl. ¶¶ 82, 90. Without factual allegations regarding the creditor/debtor relationship and other substantive requirements that must be pled to state a valid fraudulent transfer claim, it is unclear whether the Funds can be considered a creditor of the transferor entity. Accordingly, Defendants' Motions to Dismiss with respect to Counts I, II and III will be granted, with leave to

amend. Moreover, until the Receiver articulates on which Receivership Entity's behalf he is suing, the Court cannot determine whether a valid cause of action has been stated for unjust enrichment. Accordingly, Count IV is dismissed without prejudice for the same reasons Counts I, II, and III are dismissed.[2]

**Leave to Amend**

Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely granted when justice so requires." Therefore, in accordance with the usual practice upon granting a motion to dismiss, leave to replead those counts that are dismissed herein without prejudice will be permitted.

**Conclusion**

In accordance with the findings made above, it is hereby

**ORDERED AND ADJUDGED** that Defendant James W. Raker's Motion to Dismiss Complaint [DE 16] is GRANTED, and Defendant Robert D. Maum's Motion to Dismiss

---

[2] Because the Court is dismissing without prejudice the Receiver's claim for unjust enrichment, it is unnecessary for the Court to address the merits of Defendants' *in pari delicto* defense. Regardless, the Court points out for the benefit of Defendants that *in pari delicto* is an affirmative defense which may involve factual questions which cannot be resolved on a motion to dismiss. *See Banco Industrial de Venezuela, C.A. v. Credit Suisse,* 99 F.3d 1045, 1050 (11th Cir. 1996).

Complaint [DE 44] is GRANTED.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 31st day of March, 2008.

KENNETH A. MARRA
United States District Judge

copies to:

All counsel of record